Our final case of the day is United States v. Echols. Mr. Fingerroot. Yes, Your Honor. Good morning, Your Honors. May it please the Court, my name is James Fingerroot. I'm a third-year law student at Northwestern, and I'm joined by Professor Daniel Hamilton, seated behind me at the Council's table. We represent defendant-appellant Delon Echols, who was sentenced to 60 months in prison for attempted possession with intent to distribute MDMA. We ask this Court to reverse his conviction for two reasons. First, because the trial court erroneously admitted hearsay testimony that allowed the government to improperly bolster the credibility of its star witness. And second, because this erroneous admission had a prejudicial effect on the outcome of the trial. So, turning first to the issue of error. At trial, Echols' counsel highlighted the fact that Renita Burns, the government's star witness, had not been honest with law enforcement as early as August 26th. In response, the government asked Agent Ryan Bandy to testify as to things that Renita Burns had told him on September 12th, more than two weeks later. Over the objections of Echols' counsel, the trial court admitted this testimony as prior consistent statements pursuant to Rule 801D1B1. However, unfortunately, these statements did not meet the temporal requirement of the rule necessary to make them admissible. These statements, as I mentioned, were made on September 12th, which is more than two weeks after Renita Burns first started fabricating to law enforcement. In terms of pinpointing her specific motive to fabricate, the record supports the fact that starting as early as August 26th, Renita Burns started being dishonest with law enforcement. And at some point between August 26th and August 29th, likely on August 28th, Renita Burns discovered that her boyfriend was involved in this plot to send packages full of drugs to her house. On around August 28th, Renita Burns was told by her boyfriend Deshaun Burt, who himself had heard from his cousin, that a second package, the package in question, the one filled with MDMA, was on its way to her house. So, again, Delaunay Echols was not involved in this at all. She finds out from her boyfriend. And there's a case precedent from this court's sister circuits that suggests that essentially as soon as there's sort of a personal stake in the case, that's when the motive to fabricate really arises. So Collicott, for example, there in the Ninth Circuit held that the moment the declarant was stopped by police and started being questioned by police, that's when the motive to fabricate arose. And so in this case, that motive to fabricate arose at least two weeks prior to September 12th when Renita Burns made these statements to Agent Ryan Bandy that were admitted as the prior consistent statements. Mr. Fingerroot, could I focus you on the question of how specific an objection needs to be here? Yes, Your Honor. No mention of the word hearsay in the initial objection. I'll grant you that everybody seems to have understood it. But I've been struggling with the defense counsel's silence on the timing aspect of an 801 D1B exception. Yes, Your Honor. So regarding sort of the hearsay objection, you're right. Everybody understands what's going on. As this court has said in Whitaker in that progeny, in its progeny, counsel doesn't need to use these specific buzzwords. And that's kind of what happens here. Echols counsel used the term bolstering, which is specific to this rule and specific to the timing issue. How is it specific to timing? It's the same word. I'll tell you what's bothering me about this, which is that the purpose of the 103 specific objection requirement is to give the district judge a fair shot at addressing the issue. And I find it difficult to believe if the timing issue had been brought to his attention, the judge here would have just gone ahead in silence. And so that issue does not seem to me to have been brought to his attention. Your Honor, the term bolstering that Echols counsel used is the same term that is used in United States v. Tome. So the seminal case deciding this issue, it's also the same language. Any use of prior consistent statements can be characterized as bolstering, right? Potentially, Your Honor, yes. So I'm not sure. I have trouble seeing how the use of that word substitutes for a more specific objection calling to the attention the timing question. Your Honor, it's because Tome is specific to this timing question. So Tome is sort of the seminal case with regard to the timing of the motivation and the timing of the statements themselves. So you think that the district judge should have understood from the use of the word bolstering that defense counsel was really raising the more specific argument that Ms. Burns already had the motive to fabricate as of the time of her interview with Agent Bandy? Yes, Your Honor. So it's the term bolstering that's used in Tome and used in the amendment to the rule in 2014 in combination with the fact that the government specifically points to that specific date of September 12th. And so that combination of the specific language with regard to the timing in the case law and the fact that the government responds by pointing to the specific date, that was enough to put the trial court on notice that this was really the key of the issue here, that the parties were arguing over the requirements of 801D1B1. So that was fair notice even though the judge passed over it in silence? Your Honor, the judge— that the real objection here is about timing? Your Honor, it's really about that combination. It's about the combination of the words specifically with regard to Tome and the fact that the government is pinpointing this specific date. That combination should have been enough to put the judge on notice. And that is sort of a seminal requirement of Rule 801D1B1 and of the admission of prior consistent statements. And that's really why this was an error here because the Eccles Council highlights the fact that Renita Burns had been dishonest starting as early as August 26th. And so pointing out that she had said things on September 12th does nothing to rebut that motive. It's sort of contrary to the point of Rule 801D1B1. And so that's really why this was an error here, and the government points to a couple of cases, Stecker and Fulford. But in both of those cases, there's sort of a very clear line of demarcation between the motive and the statements. And so, for instance, in Stecker, there are five years between when the statements were made and when the alleged motive arose. Could I ask you about the question of prejudice, which we will need to address through one standard or another, it seems to me. Agent Bandy gave his testimony. I didn't see any mention of it in the closing arguments. Did I miss something? No, Your Honor. The reason admitting this testimony was so prejudicial is because Renita Burns was the star witness. Renita Burns was the only witness that the government put on that could testify to the specific knowledge of the drugs inside the package. So without Renita Burns, the government doesn't have a witness who can say that Delon had the intent requisite for this crime, the intent to possess the drugs, the intent to distribute the drugs. And so by allowing the government to admit this testimony to improperly bolster Renita's credibility in the eyes of the jury, it removed questions of her credibility that the jury otherwise might have been able to consider. And because her testimony was so vital to the case, so vital to the required elements of the crime, these holes in her credibility that were patched up by Agent Bandy's testimony were prejudicial to the outcome of the trial, and certainly the trial could have come out the other way. And, of course, it's the government's burden here to prove harmless error, and that's something that the government can't do considering Renita's importance to the overall case. I see that I have about a minute and a half left. I'd like to reserve that for rebuttal if I can, Your Honors. Thank you. Certainly, Counsel. Ms. Rajagopal. May it please the Court. My name is Karalea Rajagopal, and I'm appearing on behalf of the United States. The main issue I want to address here today is whether the defendant – whether the appellate forfeited his argument. Now, as the Court is aware, when a party fails to preserve an objection at trial, this Court's review is limited to plain error. The appellate did not preserve his challenge in this case. At trial, the government elicited prior consistent statements of witness burns through Agent Bandy. The defense counsel objected to, she's testified already and it's bolstering. A logical reading of these two statements would logically imply that they're linked. And the District Court ultimately overruled the objection, noting that the appellate highlighted the issue of Utah. This Court's ruling in Swann and also in the Federal Rules of Evidence 103A1 is instructive. It's reviewed for – this issue is reviewed for plain error. In Swann, there was a general hearsay objection. And at trial, they said hearsay, but later on, they tried to argue that it was related to the issue of an agent of the defendant. Now, the Court – this Court held that they failed to put the District Court on notice for the precise nature of the defendant's concern. And that's exactly what we have here, Your Honors. There isn't a need for buzzwords, but as Judge Hamilton noted, the appellate did nothing to notify the District Court of his precise belief that Ms. Burns possessed the motive to fabricate at the time of her interview by Agent Bandy. Specificity is important when you have a multi-factor test at issue. Even if we are – it's not multi-factor. It's multiple elements. But even if we find forfeiture, plain error review is still available. So does the government have a theory by which this was actually properly admitted at this point, under which Burns developed a motive to protect her boyfriend after the September 12 interview? Yes, Your Honor. The government submits that the District Court properly admitted Burns' statement because it was admissible hearsay. But the first thing I want to note is that – That doesn't answer my question. My question is about the – do you have a theory that would make this properly admissible on the timing of motive? Yes, Your Honor. When looking at the fourth prong, it is apparent from appellate's argument that even he is unclear of when Ms. Burns developed the motive to fabricate. He's clear that it was well before that interview. If we're looking – I'm asking for your theory under which you put this in with a properly timed motive. Your Honor, the government would submit that Ms. Burns did not have a motive to fabricate. In this case, in her actions, she acted inconsistent in a way that one would if they were to have formed a motive to fabricate. And as the record shows on her direct examination – I'm not – I don't expect you to agree that she had a motive to fabricate. But do you have a theory under which – I mean the defense has certainly articulated a theory to protect her boyfriend. And I'm trying to understand why that motive would not have existed on August 29th and September 12th. Your Honor, this is, I think, why the case in Fulford is so important. In Fulford, this court noted that reasonable minds could differ as to when she had the motive to fabricate. I understand that. That's why I'm asking you for your theory. Yes, Your Honor. You know, arguably one – on one hand, one could argue she had it from the very beginning, but it's the government's position. Yes, that's their argument. Okay. It's the government's position that she did not have a motive to fabricate. Never. No. Look, I'm getting frustrated, too. The language of the rule is that it's admissible if it is to rebut an express or implied charge that the declarant recently fabricated it. And the timing question here is whether there is a claim of recent fabrication. The defense argument is that there's fabrication and it's been consistent through time. The prosecution's argument seems to be that there is no fabrication and it is consistent through time. But sub-Romanet 1 deals with recent fabrication, so there's no motive to fabricate at time 1, and there is a motive to fabricate at time 2. I don't see that you can respond to a claim that there was fabrication throughout by saying there was no fabrication throughout, because if that's true, then the conditions of admissibility under the rule are not satisfied. That's what Judge Hamilton is asking about, and it worries me, too, that we should address it. Thank you, Your Honor. In terms of recent fabrication, Renita Burns was at trial. She was subject to cross-examination, and I think that's what really the recent fabrication goes to, her statements at trial. Are they consistent or inconsistent with statements she made at a later time? And so in this case, as it relates to the issue of Utah and her discussion with Donovan, on direct examination, she stated that she went to the police because it didn't feel right. On cross-examination, she stated that she believed she told Donovan, as it relates to her relationship with her boyfriend, I think I did tell him, and then ultimately Donovan testified that witness Burns did tell him about text messages. So what this ultimately goes to show in the government's position is that she is acting in a way counter to the motive that reasonable minds could differ as to when she formed it. If we are not persuaded on this point and we find that there was an error and that it was plain, could you address the third and fourth elements of the plain error test, namely effects on the outcome and overall integrity of the process? Yes, Your Honor. Under the third and fourth prongs, the defendant still cannot prevail. In this case, Renita Burns was subject to an extensive cross-examination, as the government's briefing shows. The appellant is ultimately the one who put her motive to lie about Utah at issue. And so in looking at the sufficiency of the evidence here, there were neutral witnesses that testified. One postal worker in particular actually made a positive identification of the defendant. Identifications are strong evidence, and it especially was in this case. There was also an expert police officer witness who testified about how unwitting individuals can receive packages from overseas, how they're often placed in the names of other individuals. So in combination with neutral witnesses and the neutral witnesses that testified, the defendant or the appellant cannot prevail under the plain error standard in the fact that it did not affect his substantial rights or the impact of the judicial proceedings. If the court has no further questions, I would request that the court affirm the district court's judgment and sentence and rest on our briefing. Thank you. Thank you, counsel. Anything further, Mr. Fingerroot? Yes, Your Honor. Thank you. So just to address some things that the government said. First on the issue of forfeiture, everyone involved here was on notice. The government even used the term prior consistent statements. So everyone knew that we were arguing about Rule 801D1B1, which is, of course, again, as I mentioned earlier, why the government even referred to this specific date. That being said, even under a plain error standard, even if the objection was not properly preserved, the convictions should still be overturned because this is so contrary to well-established law and did have such a prejudicial effect. Okay, yeah. That's the question. Can you point us to a similar case on plain error review where we reversed on an evidentiary claim like this? Your Honor, I don't have any in the briefs. I do have some cases that I'd be happy to share, and I can submit a 28-J letter later if you'd like me to go ahead and bring those up now. If you have them, I'll listen to your citations. Yes. So, for instance, this is Jones v. Basinger, which is a 2011 case. The holding there was that the admission of hearsay testimony had a substantial influence on the jury's. I remember the Jones case pretty well, and this is not comparable. Well, Your Honor, I mean, in this case, Renita Burns was such a vital witness here that if the jury had not heard this evidence that the government used to bolster her credibility, then ultimately the jury would have found differently because of how important she was. Thank you, Your Honors. Thank you very much. Mr. Fingerroot, we appreciate your willingness and that of the Legal Aid Clinic to accept the appointment in this case and your assistance to the court as well as your client. The case is taken under advisement, and the court will be in recess.